## CLARK v. STATE.

## Opinion delivered March 10, 1924.

1. HOMICIDE—CONVICTION OF MURDER—SUFFICIENCY OF EVIDENCE.—
   Evidence *held* sufficient to sustain conviction for murder in the
   first degree.

2. HOMICIDE—IMPEACHMENT OF DYING DECLARATION.—Dying declar-
   ations may be impeached in the same manner as other testimony
   is impeached.

3. HOMICIDE—IMPEACHMENT OF DYING DECLARATION.—In a prosecu-
   tion for murder, it was reversible error to refuse to admit a
   statement of deceased which tended to contradict a dying declara-
   tion introduced in the case.

4. HOMICIDE—EVIDENCE.—Where the State's theory in a murder
   case was that the trouble grew out of a purchase of whiskey by
   deceased from accused, it was error to refuse to permit accused
   to ask deceased's son whether deceased drank.

5. HOMICIDE—EVIDENCE.—Where defendant's theory in a murder
   case was that deceased was threatening to kill him if he did
   not return $10 which he had won from him in a crap game,
   it was error to exclude defendant's testimony as to whether he
   had won money from deceased in the game.

6. HOMICIDE—INSTRUCTION AS TO MANSLAUGHTER.—In a prosecution
   for murder it was error to refuse an instruction that defendant
   might be guilty of manslaughter if he killed deceased without
   due care and in haste, believing that he was about to be
   assaulted, even though there was no sudden heat of passion
   which induced the act.

Appeal from Jefferson Circuit Court; *T. G. Parham,*
Judge; reversed.

*H. Jordan Monk* and *C. B. Craig,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter, Wm.
T. Hammock, Darden Moose, J. S. Abercrombie,* Assist-
ants, for appellee.

HUMPHREYS, J. Appellant was indicted, tried and
convicted of murder in the first degree in the circuit court
of Jefferson County. An appeal has been duly prose-
cuted to this court from the judgment of conviction.

Appellant shot and killed Roy Finley, on the night
of May 19, 1923, near a negro church at Swan Lake. The
deceased lived about thirty hours, and, during the time,
made a dying declaration that he had a little difficulty

with appellant over some whiskey he had bought from him; that afterwards, while he was fixing his spark plugs, appellant walked up and spoke to him, and, when he turned, began shooting at him. The State also introduced J. L. Bennett, a deputy sheriff, who testified that appellant voluntarily confessed to him, in the presence of the jailer and prosecuting attorney, that he killed the deceased for the cause and in the manner following: That Finley came down to the church, demanded the return of $10 he claimed to have lost the night before in a crap game, threatening to kill him if he did not return it; that he went home, got his gun, went back, walked up to Finley, and killed him.

Appellant took the witness stand in his own behalf, and claimed that he was laboring under fear when he made the confession, and that he did not tell the whole truth at that time. He then said that he killed the deceased in necessary self-defense.

Appellant contends for a reversal of the judgment upon the ground of the insufficiency of the testimony to support the verdict. We have only set out a general statement of the facts, as the dying declaration of the deceased and the confession of appellant to the officers tend to establish every essential ingredient of murder in the first degree, and are sufficient, within themselves, to support the verdict, if believed by the jury.

Appellant also contends for a reversal of the judgment because the court refused to admit the testimony of Henry Todd, tending to impeach the dying declaration of the deceased made to J. R. Hall. J. R. Hall testified that the deceased stated he did not know appellant was anywhere around until he was shot. Appellant offered to prove by Henry Todd that he got to deceased ten minutes after he was shot, and that deceased said, "I had just told Abraham Clark that I was going to turn him up if he did not give back my money, and Clark immediately shot me." The court excluded Todd's testimony, over the objection and exception of appellant. This court is committed to the doctrine that dying declarations stand

upon the same basis as other sworn testimony, and that such declarations may be impeached in the same manner that other testimony is impeached. *Alford* v. *State*, 161 Ark. 256. In support of this doctrine see also vol. 2 Wigmore on Evidence (2d ed.), § 1033; *State* v. *Lodge*, 33 Atl. 312; *Carver* v. *United States*, 164 U. S. 694. As the judgment must be reversed on account of the refusal of the court to permit appellant to prove a statement made by the deceased to Todd contradicting, in part, his dying declaration, we shall only discuss such assignments of error as are likely to arise on a new trial of the cause.

Appellant assigns as error the refusal of the court to allow him to ask Earl Finley, son of deceased, whether his father drank. The theory of the State was that the trouble grew out of a purchase of whiskey by deceased from appellant. The question was proper as a circumstance tending to show whether deceased would have likely had the whiskey transaction with appellant.

Appellant also assigns as error the refusal of the court to allow him to testify whether he won any money from deceased in a crap game. Appellant's theory was that deceased was threatening to kill him if he did not return $10 he had won from him in a crap game. It was therefore important for the jury to know whether deceased had lost any money in said game. If he lost any money in the game, it was a circumstance tending to support the claim of appellant that he was demanding its return. The court should have permitted appellant to answer the question.

Appellant objected severally to practically all of the instructions given by the court and to the refusal of the court to give a number of the instructions asked by him. We have examined these instructions carefully, and find that those given by the court, when construed together, correctly announced the law applicable to the facts in the case; and find that all those refused by the court were improper requests, except the one asked by appellant on manslaughter. This instruction was appellant's request No. 2. It embraced the idea that the accused

might be guilty of manslaughter if he killed deceased, without due care and in haste, believing that he was about to be assaulted, even though there was no sudden heat of passion which induced the act. The instruction given by the court upon manslaughter did not embrace this idea, so the requested instruction should have been substituted for the one given by the court.

The judgment is reversed, and the cause is remanded for a new trial.